Tucker, P.
I think the weight of the parol evidence in this case decidedly with the appellees. I take occasion to remark how dangerous is the admission of the testimony of witnesses, to change and modify the agreement of the parties by setting up a secret trust or right of redemption. It is not denied, that such testimony is admissible; but whether it was wise to have established the rule, except in cases of fraud, or oppression, or mistake of the scrivener, may well be doubted. Here are four witnesses, who swear *595 to facts which, standing uncontradicted, might have . - 5 a established this transaction as a mortgage: yet the facts and circumstances are conclusive of the contrary. In the first place, here is an absolute bill of sale, for which there seems to have been no assignable motive on the part of Ransone. He was not in the power of Frayser. He does not pretend, that the instrument was intended to be otherwise written, and that it was fraudulently imposed upon him in its present form. It was drawn not by Frayser, but by a third person, and that person (the only one present) heard nothing-of a right of redemption. It is not pretended, that Frayser had insisted as a condition of the loan, that Ransone should not disclose the real character of the transaction. What, then, could have been Rcmsone’s motive for suffering the instrument to be drawn as a bill of sale with a warranty, if he was to have the right to redeem ? He must have known the difference. And what was his motive for the various gratuitous falsehoods to numerous witnesses, to whom he repeatedly acknowledged he had sold the slaves to Frayser ? for the dishonest act of refusing to pay the physician for his services to his own slaves ? for giving his bond for the hire of his own property? Was it that he did not know he could establish his rights ? His witnesses were his near connexions, and always at hand. Was it that he was in Frayser11 s power? According to his version'of the transaction, Frayser was in his power. For he had lent him 800 dollars for an indefinite period; he had taken a mortgage for his security with an indefinite power of redemption at any -time during life; and he had neither bond, note nor covenant for repayment. In the mean time, Ransone held the slaves; and, according to the ordinary course of things, had a right to the possession of them until default made in payment, which could not be while he lived. Moreover, there was nothing to bind him to an *596 nual payments of interest, so that Frayser could neither recover from him principal nor interest during his life; while, according to Ransone's pretensions, he had a right to retain the property as his own during the sarne time. This state of things negatives, beyond question, the notion of his being in Frayser's power, and acting and speaking under duress of circumstances. But it likewise negatives, decisively, the pretension that this was a mortgage. It is not conceivable, that the parties, situated as they were, ever should have entered into such a contract: that Frayser ever could have lent his money, without any definite period of repayment, and without bond, note or covenant for its return; depending only upon a mortgage of a female slave and her children, and such a mortgage as never could be foreclosed as long as the borrower lived. This circumstance, then, and the absolute form of the bill of sale are, in my opinion, sufficient to give the stamp of falsehood to the appellant’s pretensions, and to shew the extreme danger of permitting the written evidences of contract to be disarmed of all their obligation, by parol evidence of secret trusts and pretended equities of redemption.
Decree affirmed.